UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JONATHAN M SCHNEIDER,

                                 Plaintiff,

       - against -

MAHOPAC CENTRAL SCHOOL DISTRICT,
ANTHONY DICARLO, DR. GREGORY
STOWELL, DR. BENNETT PALLANT, LESLIE
MANCUSO, MICHAEL MONGON, DAVID
FURFARO, LAWRENCE KEENE, RAY
McDONOUGH, LUCY MASSAFRA, MARC
O'CONNOR, ADAM SAVINO, MICHAEL
SIMONE and JEFFREY FINTON,

                             Defendants.
--------------------------------------------------------------x

**OPINION & ORDER**

No. 20-CV-709 (CS)

Appearances:

Jonathan Schneider
*Pro Se Plaintiff*

Lewis R. Silverman
Amanda E. D'Amico
Silverman & Associates
White Plains, New York
*Counsel for Defendants*

Seibel, J.

       Before the Court is the motion to dismiss of Defendants Mahopac Central School District

(the "District"), District Superintendent Anthony DiCarlo, District Assistant Superintendent Dr.

Gregory Stowell, District School Physician Dr. Bennett Pallant, District Administrator for

Elementary Special Education Jeffrey Finton, and District School Board Members Leslie

Mancuso, Michael Mongon, David Furfaro, Lawrence Keene, Ray McDonough, Lucy Massafra,

Marc O'Connor, Adam Savino, and Michael Simone.  (Doc. 37.)  For the following reasons, the motion is GRANTED.

## I.    BACKGROUND

### A.    Facts

For the purposes of the instant motion, I accept as true the facts, but not the conclusions, set forth in Plaintiff's Second Amended Complaint, (Doc. 31 ("SAC")), First Amended Complaint, (Doc. 21), original Complaint, (Doc. 1), and memorandum in opposition to the motion, (Doc. 39 ("P's Mem.")).  *See Washington v. Westchester Cnty. Dep't of Correction*, No. 13-CV-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (court may consider facts from pro se plaintiff's original complaint even if they have not been repeated in amended complaint); *Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a pro se plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss.").

Plaintiff Jonathan Schneider's minor child, J.S., is diagnosed with conditions including epilepsy, autism, ADHD, and intellectual disabilities.  (SAC ¶ 24.)  J.S. attended public school in Mahopac Central School District from September 2017 through August 2020.  (*Id.* ¶¶ 25-26.)

On September 27, 2019, Plaintiff met with Defendants DiCarlo, Finton, Stowell, and Pallant to discuss J.S.'s accommodations.  (*Id.* ¶ 41.)  At the meeting, Plaintiff voiced concerns relating to parent access to classrooms, the protocol for communication between parents and faculty, classroom seating arrangements, and the need for a sensory room.  (*Id.* ¶ 43.)

In early October J.S.'s dedicated one-to-one aide, Joann Stroud, informed Plaintiff that she would be leaving her position with the District because Finton had asked her to take on duties with an additional student, and then asked her to resign her position after she voiced

concerns about the proposed new plan.  (*Id*. ¶¶ 45-52.)  Later that month Amy Lagan, J.S.'s new aide, informed J.S.'s mother that Finton and Stowell had told her to stop texting J.S.'s mother, and that all future communications should go through J.S.'s teachers.  (*Id*. ¶ 58.)

Plaintiff met with Defendants again on October 30, 2019, and voiced concerns about J.S.'s aide working with additional students, and Stowell declined Plaintiff's request to assign a one-to-one non-shared aide to J.S.  (*Id*. ¶¶ 59-67.)

Throughout early November, Lagan informed Plaintiff of J.S.'s seizure activity, and of times when J.S.'s supervision might have been in violation of J.S.'s individualized education program ("IEP").  (*Id*. ¶¶ 75-88.)  Plaintiff met with DiCarlo on November 14, 2019 to again express his concerns about the inability to directly communicate with J.S.'s aide and his desire for J.S. to have a non-shared aide.  (*Id*. ¶ 91.)  On November 15, 2019, Finton informed Plaintiff that Lagan would be replaced by a new aide, and that Lagan would train the new aide to recognize J.S.'s seizures.  (*Id*. ¶ 97.)

On December 5, 2019, Plaintiff and J.S.'s doctors had a conference call with Defendants, objecting to J.S.'s aide arrangement.  (*Id*. ¶¶ 102-09.)  On December 6, 2019, the District notified Lagan's agency that Lagan would no longer be needed to help train the new aide.  (*Id*. ¶ 110.)  On December 9, 2019, J.S. was removed from school over health and safety concerns.  (*Id*. ¶ 118.)  From December 11, 2019 through January 2, 2020, Plaintiff reached out to Board members individually, voicing previous apprehensions as well as his concern that Lagan had been removed from her assignment to J.S. following the December conference call.  (*Id*. ¶¶ 120-27.)

On January 3, 2020, Finton notified J.S.'s mother that a new "seizure log" was being implemented for J.S, which Plaintiff found inadequate.  (*Id*. ¶¶ 131-32.)  On January 6, 2020, J.S.

returned to school, accompanied by his mother.  (*Id*. ¶ 132.)  On January 7, J.S.'s mother was

denied permission to accompany J.S. into school but was allowed to join J.S. the following

day.  (*Id*. ¶¶ 134-42.)  On September 1, 2020, J.S. was permanently removed from the District by

Plaintiff and moved to a different school.  (*Id*. ¶ 150.)

> **B.**     **Procedural History**

On January 27, 2020, Plaintiff brought this action against Defendants.  (Doc. 1.)  Plaintiff

filed an Amended Complaint in June 2020.  (Doc. 21.)  After a pre-motion conference in

September 2020 at which I granted Plaintiff leave to further amend, (Minute Entry dated Sept.

30, 2020), Plaintiff filed the Second Amended Complaint in October 2020, (Doc. 31).  Plaintiff

brings claims for:  1) retaliation in violation of the First Amendment under 42 U.S.C. § 1983 and

in violation of Section 504 of the Rehabilitation Act of 1973; 2) violation of 18 U.S.C. § 241;

and 3) violations of the "stay put" provision of the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. § 1415.  The instant motion followed.  (Doc. 37.)

## II.     LEGAL STANDARD

> **A.**     **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

"A federal court has subject matter jurisdiction over a cause of action only when it 'has

authority to adjudicate the cause' pressed in the complaint."  *Arar v. Ashcroft*, 532 F.3d 157, 168

(2d Cir. 2008) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425

(2007)), *rev'd en banc on other grounds*, 585 F.3d 559 (2d Cir. 2009).  "Determining the

existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed

for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the

statutory or constitutional power to adjudicate it."  *Id.* (cleaned up).  "When jurisdiction is

challenged, the [party asserting jurisdiction] bears the burden of showing by a preponderance of

the evidence that subject matter jurisdiction exists, and the district court may examine evidence

outside of the pleadings to make this determination." *Id*. (cleaned up).  "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (cleaned up), *aff'd on other grounds*, 561 U.S. 247 (2010).

When a defendant moves to dismiss both for lack of subject matter jurisdiction and on other grounds such as failure to state a claim upon which relief can be granted, the Court must address the issue of subject matter jurisdiction first.  *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

### B.    Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (cleaned up) (quoting Fed. R. Civ. P. 8(a)(2)).

C.      **Pro Se Plaintiffs**

Complaints made by *pro se* plaintiffs are to be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (cleaned up), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (cleaned up).  Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

III.    **DISCUSSION**

A.      **Failure to Exhaust**

Defendants first argue that the Court lacks subject matter jurisdiction over this entire action because Plaintiff failed to exhaust his administrative remedies under the IDEA, 20 U.S.C. § 1400 *et seq*.  (Doc. 37-1 at 4.)  Defendants maintain that all of Plaintiff's federal claims, at their core, seek relief for the denial of a "free appropriate public education," or "FAPE," under the IDEA, and therefore are subject to the IDEA's administrative exhaustion requirement.

The IDEA "requires States to provide disabled children with a free appropriate public education." *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 9 (1993) (cleaned up). Schools are required to create an IEP for each qualifying child to ensure that each such child receives a FAPE. *See R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012). "The IEP, the result of collaborations between parents, educators, and representatives of the school district, sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 415 (2d Cir. 2009) (cleaned up); *see* 20 U.S.C. § 1414(d)(1)(A).

New York's system of review for when a parent believes that the child's IEP is not IDEA-compliant comprises two stages. First, a parent must file a "due process complaint" alleging any of the IEP's perceived deficiencies. *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014) (citing 20 U.S.C. § 1415(b)(7)(A)). Then, if the deficiencies remain after 30 days, the parent and school district will have an "impartial due process hearing" before an Impartial Hearing Officer ("IHO"). *Id.* (citing 20 U.S.C. § 1415(f)(1)). After the IHO decision, either party may request that the IHO's order be reviewed by a State Review Officer ("SRO"). *Id.* The SRO may modify or affirm the IHO's order, after which a dissatisfied party may bring a civil action in court to have the SRO's decision reviewed. *R.E.*, 694 F.3d at 175.

As an initial matter, Defendants are correct that Plaintiff does not allege in the Second Amended Complaint, or either of his first two complaints, that he has pursued the administrative remedies provided under the IDEA, and Plaintiff in his memorandum in opposition acknowledges that he has not done so. (*See* P's Mem. at 1, 3.) Defendants are also correct that a failure to exhaust administrative remedies, where such exhaustion is required, would deprive

this court of jurisdiction. *See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002) ("A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction.").  Accordingly, I must determine whether this is a case that, though based on several provisions in addition to the IDEA, requires IDEA exhaustion.

> Section 1415(*l*) of the IDEA provides that:
>
> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act [("ADA")], title V of the Rehabilitation Act [including § 504], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].

The Supreme Court interpreted this provision in *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017):

> Section 1415(*l*) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit seeks relief that is also available under the IDEA.  We first hold that to meet that statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only relief the IDEA makes available.  We next conclude that in determining whether a suit indeed seeks relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint.

*Id.* at 752 (cleaned up).  In sum, a plaintiff seeking relief under the IDEA obviously must exhaust the statutorily provided administrative remedies, and a plaintiff seeking relief under the Constitution, 42 U.S.C. § 1983, or Section 504 of the Rehabilitation Act of 1973 must still have exhausted the IDEA's administrative remedies if the claims seek relief for the denial of a FAPE.

The Supreme Court also supplied a method for courts to evaluate whether the claim substantively seeks relief for the denial of a FAPE:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions.  First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school – say, a public theater or library?  And second, could an *adult* at the school – say, an employee or visitor – have pressed essentially the same grievance?  When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward.  But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.* at 756.  Here, Plaintiff brings claims explicitly under the IDEA, as well as claims for First Amendment retaliation under 42 U.S.C. § 1983, for retaliation in violation of Section 504 of the Rehabilitation Act of 1973, and for violations of 18 U.S.C. § 241.

### 1.    IDEA Claim

Claim III in Plaintiff's Second Amended Complaint alleges that Defendants "abolished some of JS's IEP accommodations without notice . . . ."  (SAC ¶ 169.)  Plaintiff does not specifically allege in this section what accommodations were abolished, but incorporates the facts alleged in paragraphs 1-160.  (*Id.* ¶ 167.)  From that, the Court can infer that Plaintiff was referring to the number of unilateral changes made to J.S.'s aide assignment and changes relating to communication through teachers rather than aides, and possibly the delay in J.S.'s mother being allowed into school in January as well as the implementation of a seizure log.

These changes to accommodations are plainly brought under the IDEA and are based on the denial of a FAPE.  Plaintiff specifically challenges changes to J.S.'s IEP, *see Fry*, 127 S. Ct. at 757 ("A further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings."), and cites to a provision of the IDEA requiring various procedural

protections before changes to an IEP are made, 20 U.S.C. § 1415.[1]  And as explained below, the actions taken by Defendants are captured by *Fry*'s two-question test, confirming that the gravamen of the complaint is the denial of a FAPE.  Therefore, Plaintiff was required to have exhausted his administrative remedies under the IDEA before bringing this claim.  Since Plaintiff does not allege facts indicating exhaustion, Defendants' motion to dismiss is GRANTED with respect to Plaintiff's Claim III.

### 2.      Retaliation Claims

Plaintiff's retaliation claims (under Section 1983 and Section 504) are essentially based on the same facts as Plaintiff's IDEA claim discussed above:  changes made to J.S.'s aide assignment, rules relating to communication through teachers rather than aides, the January delay in J.S.'s mother being allowed into school, and the implementation of a seizure log.  (SAC ¶¶ 160, 167.)  Plaintiff alleges that Defendants took these actions as retaliation for his exercising his rights under the First Amendment and Section 504.  (*Id.* ¶¶ 160-63.)  But when Plaintiff exercised his right to voice concerns, those concerns were based on the alleged failure of Defendants to provide a FAPE to J.S.  And when Defendants allegedly took retaliatory actions against J.S. and Plaintiff, those actions took the form of an alleged failure to provide a FAPE.  Exhaustion under the IDEA was thus required.

This is demonstrated by applying *Fry*'s two-question test to Plaintiff's allegations.  The actions taken by Defendants relate to a student's assigned classroom aide, to the communication between a parent and a teacher, to a parent being able to accompany the child to school, and to a

---

[1] Plaintiff frames this claim as a "[s]tay [p]ut" violation, (SAC at 33), but such a violation can only exist when a child's accommodations are changed while a plaintiff is in the process of exhausting administrative remedies, *see* 20 U.S.C. § 1415(j); *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 526 (2d Cir. 2020) (stay-put provision applies "while the administrative and judicial proceedings are pending"), which Plaintiff was not.

student's aide keeping a seizure log for the student.  None of these accommodations would apply

to a situation at a public facility other than a school, such as a public theater or library.  *See Fry*,

137 S. Ct. at 756.  Similarly, all of these accommodations would only apply to a child/student,

rather than an adult visitor or staff member at a school.  *See id*.

      *Fry* did not address whether retaliation claims could require exhaustion of the IDEA's

administrative remedies, and the Second Circuit has yet to weigh in on this question.  Several

other courts, however, have addressed this issue, and I find their approaches instructive.

      First, even before *Fry*, numerous other circuit courts agreed that retaliation claims may be

subject to the IDEA's exhaustion requirement.  *See, e.g.*, *Batchelor v. Rose Tree Media Sch.*

*Dist.*, 759 F.3d 266, 273-74 (3d Cir. 2014) ("Appellants' retaliation claims are related to the

provision of FAPE under 20 U.S.C. § 1415(b)(6) and, as such, must be exhausted."); *M.T.V. v.*

*DeKalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1158-59 (11th Cir. 2006) ("[Plaintiff's] parents contend

the School District retaliated against them for advocating for their son's legal rights to receive an

appropriate education . . . .  Their retaliation claims clearly relate to [the child's] evaluation and

education, and, therefore, are subject to the exhaustion requirement.") (cleaned up); *Rose v.*

*Yeaw*, 214 F.3d 206, 210 (1st Cir. 2000) (finding that a retaliation claim "relate[d] unmistakably"

to a student's educational placement); *Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 51-52 (1st

Cir. 2000) ("[Plaintiff's] claim of retaliation is literally related to the identification, evaluation, or

educational placement of her child.") (cleaned up).

      These circuits have continued this approach after *Fry*.  For example, the Third Circuit

recently held that allegations that a school board "took retaliatory actions and adverse actions

against [parents] as a result of their efforts to vindicate [their child]'s right to a FAPE . . . also

arise from educational harm and . . . would not have occurred outside the school setting and a

nonstudent could not (and would not) have pressed essentially the same grievance." *S.D. by A.D. v. Haddon Heights Bd. of Educ.*, 722 F. App'x 119, 126-27 (3d Cir. 2018) (cleaned up). Similarly, the Fourth Circuit reasoned that a "claim under the anti-retaliation provisions of the ADA and the Rehabilitation Act also is subject to the exhaustion requirement." *Z.G. ex rel. C.G. v. Pamlico Cnty. Public Schs. Bd. of Educ.*, 744 F. App'x 769, 779 (4th Cir. 2018). The plaintiff parents in *Z.G.* alleged that the school district "retaliated against them due to their efforts to enforce their statutory rights for their minor, public school going child." *Id.* (cleaned up). The court reasoned that such a claim "arises directly from the parents' advocacy for [their child's] educational rights" and was "grounded on the school's failure to provide a FAPE." *Id.* (collecting cases).

District courts within this Circuit have applied the *Fry* framework in determining whether a retaliation claim is subject to the IDEA's exhaustion requirements.[2] For instance, retaliation claims that relate to changes to a student's IEP or communications with parents are ordinarily subject to the exhaustion requirement. *See, e.g.*, *Avaras*, 2019 WL 4600870, at *18 (retaliatory changing of the child's IEP without input from parents was based on the denial of a FAPE). Conversely, claims related to retaliatory disciplinary measures like unwarranted dismissal, exclusion, suspension, or involvement of emergency personnel are not sufficiently related to the denial of a FAPE. *See, e.g.*, *Rutherford v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778, 2019 WL 1437823, at *31-32 (S.D.N.Y. Mar. 29, 2019) (retaliatory exclusion from programs and activities were not related to the denial of a FAPE); *S.G. v. Success Acad. Charter*

_____

[2] Importantly, the type of relief sought by plaintiffs – monetary or otherwise – is not determinative of whether or not a claim is subject to the IDEA exhaustion requirements; rather, the significant issue is whether the gravamen of the suit seeks relief for a denial of a FAPE. *See Avaras v. Clarkstown Cent. Sch. Dist.*, No. 18-CV-6964, 2019 WL 4600870, at *17-18 (S.D.N.Y. Sept. 21, 2019) (collecting cases).

*Schs., Inc.*, No. 18-CV-2484, 2019 WL 1284280, at *9-10 (S.D.N.Y. Mar. 20, 2019) (retaliation claims based on a district's grade level demotion of student were related to the denial of a FAPE, while claims based on retaliatory disciplinary measures, such as the school calling emergency personnel without a legitimate purpose, were not); *Patrick v. Success Acad. Charter Schs., Inc.*, 354 F. Supp. 3d 185, 226-28 (E.D.N.Y. 2018) (alleged retaliatory calling of emergency medical services for student and alleged retaliatory false accusation that student had bedbugs on his clothing not subject to exhaustion requirement); *Lawton v. Success Acad. Charter Schs., Inc.*, 323 F. Supp. 3d 353, 362 (E.D.N.Y. 2018) (retaliation claims involving former principal placing disabled students on "Got to Go" list intending to remove them from school, using strict disciplinary rules to remove students from class on a daily basis, and threatening to call the police when faced with complaints about mistreatment not based on denial of FAPE).  In each example where courts found that retaliation claims were not subject to the exhaustion requirement, the retaliatory behavior could have taken place in another public facility such as a library, or could have been the subject of a claim by an adult facing such retaliatory measures.

Applying this framework, I agree with Defendants that the issues raised in Plaintiff's first claim are all subject to the IDEA's exhaustion requirement.  The crux of Plaintiff's allegations is that because he spoke out regarding parent access to classrooms, protocol for communication between parents and faculty, classroom seating and sensory room arrangements, and J.S.'s aide placement, Defendants retaliated by changing J.S.'s aide arrangement and limiting the ability of Plaintiff and J.S.'s mother to communicate with their child's aides.  (*See* P's Mem. at 1-2.) These alleged retaliatory actions all concern J.S.'s IEP and interference with his FAPE, and

could not have occurred in a non-school setting or to an adult, and are therefore are subject to

IDEA's exhaustion requirement.[3]

For the reasons stated above, Plaintiff's retaliation claims are subject to the IDEA's

exhaustion requirement.[4]  Plaintiff has not exhausted his administrative remedies under the

IDEA with respect to these claims, and therefore Defendants' motion to dismiss is GRANTED

with respect to Claim I.[5]

### B.    Conspiracy Claim

Plaintiff's Claim II alleges a violation of 18 U.S.C. § 241 – a criminal statute.  It is well-

settled law that "[a] private citizen cannot prosecute a criminal action in federal court."  *Mosseri*

*v. Woodstock Hous. Dev. Fund-Corp.*, No. 18-CV-9431, 2019 WL 2287964, at *2 (S.D.N.Y.

May 28, 2019) (citing *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981)).  Further, by not

responding in his opposition to Defendants' assertion of that argument, Plaintiff has abandoned

this claim.  *See, e.g.*, *Turner v. Sidorowicz*, No. 12-CV-7048, 2016 WL 3938344, at *4

(S.D.N.Y. July 18, 2016) (*pro se* plaintiff who opposed some arguments may be considered to

---

[3] While Plaintiff has not raised this argument, "the exhaustion requirement does not apply in situations in which exhaustion would be futile."  *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 205 (2d Cir. 2007) (cleaned up).  "To show futility, a plaintiff must demonstrate that adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process."  *Id.* (cleaned up).  Plaintiff has not suggested that his injuries could not be remedied through the state administrative processes, or that those processes would otherwise be futile, nor has Plaintiff included facts in his complaints or opposition papers that would allow the Court to infer the same.

[4] Because I find that Plaintiff's claims are subject to the IDEA exhaustion requirement, I need not reach Defendants' arguments on the merits of those claims.

[5] Plaintiff's disability discrimination claims, to the extent he intended to raise any, similarly relate to J.S.'s FAPE and are also subject to IDEA's exhaustion requirement.

14

have abandoned others).  For the above reasons, Defendants' motion to dismiss is GRANTED

with respect to Plaintiff's Claim II for failure to state a claim on which relief can be granted.

***

The Court sympathizes with Plaintiff's efforts, which plainly appear to be based on a

sincere belief that his son did not get the services he needed.  Plaintiff is not to be faulted for

fighting for his child.  But this Court cannot skirt the exhaustion requirements required by law.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.[6]  The Clerk of

Court is respectfully directed to terminate the pending motion, (Doc. 37), and close the case.

**SO ORDERED.**

Dated: August 31, 2021
      White Plains, New York

                                     _____
                                     CATHY SEIBEL, U.S.D.J.

---

[6] Leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), but it may properly be denied for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Plaintiff has already amended his complaint twice, (*see* Docs. 1, 21, 31), the second time after having the benefit of Defendants' pre-motion letter and the discussion at the pre-motion conference.  In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*).  Further, Plaintiff has not asked to amend again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this opinion.  Indeed, "[t]he problem[s] with [Plaintiff's] causes of action [are] substantive," and "better pleading will not cure [them]." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Accordingly, the Court declines to grant leave to amend *sua sponte. See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*).